Everybody sit. Go. And speak up now, please. All right. Good morning, Your Honors, and may it please the Court, Betty Schumanner, and I have with me Henry O. for Appellant Carlisle-Fortran Trust. I would like to reserve five of my 15 minutes for rebuttal. Your Honors, whether the standard for standing is one in which the test is, does this claim belong to the debtor, could it have been asserted by the debtor, or whether it is a general versus particularized test, Carlisle's claims satisfy both tests. Carlisle has asserted a claim against the nVidia defendants for breach of its lease. The claim against the nVidia defendants is based on the fact that nVidia assumed the lease, the 3DFX, the debtor had formerly been a party to. Let me ask you something. You had a lease with three, I'm going to call them 3D, because I'm not going to go through everything, 3D. That lease, I imagine, had a restriction on any assignment without your approval. Correct. Makes sense, because you don't know who's going to be coming in, right? You have a claim in here for a secret agreement. Intentional interference with contractual relationships based on a secret agreement based on nVidia getting together with 3D and using your space for some months. And you didn't know about it, and then when you found out about it, it was the market had gone down, right? No. Actually, it's CarAmerica, which is the other appellant in this case. And we'll just wait for CarAmerica to show up, right? But in any event, we have a slightly different but somewhat similar situation where there was clearly an asset purchase agreement, so-called, that stated that nVidia would assume the leases or the contracts listed on a particular schedule to the agreement. We'll call it Schedule B, that was to be delivered on December 18, 2000. Schedule B that was delivered on December 18, 2000 listed among the contracts that nVidia assumed Carlisle's lease of its space in San Jose. But how do you prove that Carlisle assumed it? Don't you have a statute of frauds problem? No. Why? We do not have a statute of frauds problem because the asset purchase agreement expressly states that nVidia will assume all of the contracts listed on Schedule B and exhibit to the agreement. The exhibit to the agreement under California law need not be signed. The contract was signed. The contract pursuant to which nVidia assumed the leases is a signed, fully integrated contract. That contract states the Schedule B that is to be delivered on December 18, 2000 lists the contracts that nVidia is assuming. So you're a third-party beneficiary of that contract? Most assuredly. And the assignment took place on December 15, 2000. That's number one. That assignment is only voidable, and it can only be voided by Carlisle and no one else. Several months later, nVidia and 3DFX directors and officers conspired to assign that lease back to 3DFX at a time when 3DFX was already ceased operations, 3DFX was insolvent and couldn't perform that lease, and without the consent or knowledge of Carlisle. And Carlisle would never have allowed and doesn't allow and doesn't consent to the reassignment of that lease back to nVidia. Did Carlisle know about the purchase agreement which listed the lease as an assumed contract for those months before it was assigned back to 3DF? No. But remember, the assignment is voidable only by Carlisle. Carlisle doesn't have to approve the assignment for the assignment to go into effect. Under California law, the lease is in effect when it is assigned, regardless of what the lease says, requiring the consent of the landlord. The lease assignment goes into effect when made. That lease assignment was made on December 15, 2000. The lease assignment, when it contains a provision requiring consent by the landlord, which is a provision for the benefit of the landlord, is merely voidable. It is not void ab initio. It is voidable. And Carlisle never voided it. What's your cause of action that's separate from the estate itself? That's the big question here. Oh, breach of lease is one cause of action that is separate from the estate. 3DFX has no claim for breach of lease. In addition, I'm sorry, I'm sorry. In addition, we have interference with lease claims that belong to Carlisle that could never be asserted by the debtor. It is the debtor who breached the lease. It was NVIDIA who induced, frankly required, contractually required 3DFX to breach the lease. And so 3DFX, the breaching party, has no ground to assert against NVIDIA, you interfered with my contract by inducing me to breach the lease. Only the injured party has that claim. And the only injured party in this situation is Carlisle. Can't the trustee representing the estate say that NVIDIA in fact assumed all the That would be contrary to the terms of the asset purchase agreement. Oh, meaning, meaning, I'm sorry, I just want to make sure I understand the question. Do you mean can't 3DFX say that NVIDIA is obligated to perform the obligations under the lease and because it hasn't, it's exposed 3DFX to liability? Sure. Certainly, but then it would simply have to get the money and turn it over to the creditor. If the money it's collecting from NVIDIA is the rent, right, it's really asserting a claim on the creditor. In addition to which, there's a bankruptcy cap that protects 3DFX up into the cap. So even under the lease, 3DFX's liability is limited and can't Does that limit you also? Does that not limit your client also, the cap? Not vis-a-vis third parties. The law is absolutely clear that the benefit of the cap accrues to the debtor only. It does not accrue to guarantors. It does not accrue to any other surety. It does not accrue to any multibillion-dollar corporation that is not in bankruptcy. It is for the benefit of the debtor and its estate. It is not for the benefit of third parties. Now, you said you were going to reserve some time for rebuttal. And are you splitting your time up with CAR America? Yes. I have 10 minutes. All right. You have 20 minutes overall. So you have 10, he has 10. I have 15 and he has 5. All right. Thank you, Your Honors. Thank you. Hello, Your Honor. I'm John O'Donnell for the landlord, creditor, plaintiff appellate CAR America Realty Corporation. And, Your Honor, CAR America was the party that alleged the existence of the secret agreement between 3DFX and NVIDIA. And under the terms of that agreement, CAR America had a long-term lease with 3DFX. That lease prohibited an assignment or subletting without the consent of CAR. We cited that lease provision in our third amended complaint. And what happened in this case is, is that NVIDIA and 3DFX entered into a secret agreement to breach that provision, put NVIDIA into possession of our premises, pay rent, occupy our premises, make it appear as though, but made it appear as though 3DFX remained in possession when, in reality, it was NVIDIA. None of those facts were disclosed to CAR America. They stayed in there for a number of months. NVIDIA then found other quarters in Austin, vacated our space, left us holding the bag. And in the interim, what had happened is the market had totally changed. And so when we went to re-let the premises, we were faced with a completely different market. Why isn't the difference in the market an unforeseeable cause of damage and, therefore, not a proximate cause? There was a case where the negligent contractor didn't paint the house in time, and there was a delay in selling the house, and $300,000, something that's happening probably every day now, the drop in value of the house, and that was found to be not proximately caused. Why doesn't that apply to your case? Because what had happened here is, is that if 3DFX had not breached the lease, had not been induced to breach the lease by the conduct of NVIDIA, if they had not kept all of this secret and had come to CAR America at the outset, CAR America would have either negotiated a lease with NVIDIA at that time when the market was advantageous to CAR America or would have taken action against 3DFX to evict them. Is there a different proximate causation rule for negligence and intentional tort to wit fraud? I don't believe so. All right. And I don't think it really matters, because here it's a timing issue. If the causation is their failure to disclose that they had taken possession of our space and to lead us to believe that 3DFX was still in the space. Okay. So that responds to your issues about the secret agreement. You know, Your Honor, when I was thinking about the oral argument here, one of the things I was wondering about is why has this case become so complicated? Because I don't really think it is that complicated. I think it's actually very simple. You figure out who was wronged, and the party that was wronged is the party that has the right to bring the claim. In the case of CAR America, CAR America was wronged because of interference with contract. Only CAR America could bring that claim. 3DFX could never bring that claim. Therefore, the trustee could never bring that claim. CAR America alleged in its successor liability claim that 3DFX had taken possession of our space, paid rent, assumed the lease. Only CAR America could bring that claim. As Ms. Schumanner brought up, there's the issue of the cap. The district court acknowledged that the trustee can't pursue the cap claim, yet came up with this ironic decision where the cap can't be pursued, but the landlord creditors don't have standing to pursue it. That didn't make sense. We have a fraud claim that also only CAR America could bring. Not the trustee. We alleged in our fraud claim that 3DFX and NVIDIA entered into this secret agreement. I've already explained to you what our damages were. There's no way that the trustee could have brought that claim. We have a conspiracy claim. We alleged that 3DFX and NVIDIA. But you do grant that the trustee can bring the claim regarding the fraudulent conveyance, the cheap purchase of the assets, because that's a generalized claim that hurts all creditors, right? Not just you. The fraudulent conveyance claim is unusual because what had happened in this case is, is that the bankruptcy court actually determined that the landlord creditor did have a viable fraudulent transfer claim. Then sua sponte, the district court, when the reference was withdrawn, determined that there wasn't such a claim. But the district court had stayed prosecution of that claim. So in our view, the fraudulent conveyance claim should have been stayed and should remain stayed until the bankruptcy trustee's prosecution of that claim was completed. But what I want to focus on are the claims that are clearly only belong to CAR America, the only person in the world that could bring this interference with contract claim, the successor liability claim as we've alleged it. And you're bringing that claim against NVIDIA, not against 3DX. Against NVIDIA. Not against, we're not bringing that claim against 3DFX anymore because they're stayed. But the real question is, could 3DFX ever bring those claims? And the answer is no. Those are claims that are personal to CAR. And I'm going to reserve one minute. All right. Let's hear from, I guess it's NVIDIA Corporation. The trustee in bankruptcy is not making an appearance? Not today, Your Honor. Karen Johnson McEwen from Orrick, Harrington and Sutcliffe. I have two of my colleagues with me, Justin Lichterman and Jim Kramer. We represent NVIDIA. The trustee is not here today because the trustee has actually tried his fraudulent transfer cases and claims and successor liability claims against NVIDIA. The trial judge, the bankruptcy court, conducted that trial in 2007 and earlier this year issued an 87-page memorandum decision addressing certain specific components of those claims. The bankruptcy court determined that he would try just the question of the adequacy of consideration paid, the valuation of the assets that were transferred to NVIDIA and whether the payment that NVIDIA made to 3DFX, $70 million in cash, was reasonably equivalent value. Well, Ms. Johnson, you've heard the position of counsel for both CARAmerica and CARLisle. Why don't you just tell me why they're wrong? I'll try to respond to them. There are a number of issues, and I'll try to move quickly through them. Oh, and I should note that Douglas Applegate is also here representing the 3DFX directors and officers, and he is taking five minutes of our side's 20. Was there a suit brought against the directors? Yes, there was. There was. And I think it's probably best for Mr. Applegate to address that so that I can focus on the things that counsel for CARLisle and CAR have commented. Why don't they have separate causes of action for some of these matters that were raised? Well, sure. Let's start with the breach of lease claim that CARLisle has asserted that Ms. Schumann raised. CARLisle actually alleged that CARLisle claims that NVIDIA assumed the lease by virtue of those schedules. And, Judge Bea, you asked very aptly the question, don't they have a statute of frauds problem with that? And that actually was the basis for Judge Ware's decision that that cause of action should be dismissed. It wasn't a standing question. It was a determination that the claim had no merit as a 12B6 matter because there was no evidence that NVIDIA had, in fact, agreed to assume the lease. And I will quote from paragraph 90 of CARLisle's fourth amended complaint in which they quote the asset purchase agreement itself. That's the agreement between NVIDIA and 3DFX. And they say, reading from the asset purchase agreement in paragraph 90, they quote that the APA provides, on or before December 18, 2000, 3DFX shall deliver to NVIDIA all proposed schedules, proposed, and exhibits under this agreement, none of which shall be deemed a part hereof without the written consent of NVIDIA sub and NVIDIA. The only subsequent writings between NVIDIA and 3DFX were the closing agreement that the parties entered into months later in April of 2001, and that schedule B that counsel quoted from did not include the 3DFX lease. So at the time that NVIDIA, so NVIDIA and 3DFX agreed in the asset purchase agreement that 3DFX could submit schedules after the fact, the APA was signed on December 15th, and then on December 18th they could submit schedules. They did so, although there's some debate in the case about whether it was the 18th or the 19th. Those schedules are 2 inches thick. They consist of almost the entirety of volume 6 of the excerpts of records. So your position is that the agreement of sale was preliminary as to the assumption of the lease, and explicitly so, and was never finally executed? There was no final agreement executed pursuant to which NVIDIA agreed to assume the lease. What that APA said on December 15th was 3DFX, get us some schedules of assets that we're going to acquire. It's a long, detailed, complex list. The asset purchase agreement itself, with all of its exhibits, is about, you know, 8 to 10 inches high. So this is a complex agreement. It's not something that the parties agreed to on the fly. The asset purchase agreement accounted for the prospect that it would be necessary after the fact to develop exactly what was being transferred, and they did so. At the end of the day, on April 18th, 2001, when the agreement closed and title was transferred, the Carlisle lease was not among those assets. Well, did NVIDIA take it over anyway? No. No, no, no. Never did use it? No. NVIDIA never used that space, never took it over, never occupied it, never had anything to do with it. The Carr space is a little bit of a different story, but with just focusing on Carlisle for the moment, there is nothing to it. Also, I believe, as we've pointed out before, the Carlisle lease actually does explicitly say that any assignments without the landlord's consent are void, not voidable. The word is void. I think it's also important to point out that one of the – when we do talk about standing – Well, you hardly consent when they're not told about it. Well, there was nothing to tell them because there was no transfer intended and none given. In other words, what you're saying is that in the negotiation it was conceived as a possibility that the Carlisle lease would be assumed by NVIDIA, but in the event, and four months later, NVIDIA, for reasons which we don't have to go into, didn't assume it because it didn't execute the assumption of the lease. Exactly. Period. Period. Can we go on to Carr America? We can. We can. Now, Carr America is interesting. They make an argument that their lease was secretly assumed for a period of months and then NVIDIA vacated the premises. There are – and I'm just going to focus on the allegations. I think the facts are very different from the allegations. Well, I don't think they say it was secretly assumed. I think they just say that NVIDIA moved in, paid the rent, pretended they were 3D, and then moved out and left them holding the bag in a lower market, more or less. That's the allegation. That's the allegation. Or that's the asserted allegation now. What you see, though, if you look at their complaint, their third amended complaint, which was the one that was finally disposed of with prejudice, their first cause of action for interference with contract alleges that NVIDIA caused interference with the Carr lease, quote, by entering into the NVIDIA agreement, which is the asset purchase agreement, which caused 3DFX to fail to pay rent when due, to fail to pay its debts to Carr when due, to vacate and abandon the premises, and to wind up and dissolve. That's the allegation in the complaint. The secret agreement is their allegation that they were harmed because NVIDIA actually subsidized 3DFX rent for a period of time, and that doesn't strike me as harm. That strikes me as a benefit that Carr received. They received the 3DFX continued to pay rent after this asset purchase agreement was entered into, and after the agreement was entered into, that 3DFX would dissolve. So if Carr is alleging that the entry into the asset purchase agreement is what caused their harm, and that's what their complaint says. No, they're not saying that. As I get the picture, they're alleging that the subterfuge of having NVIDIA move in and pay 3D's rent lulled them into the idea that they were getting their rent from 3D, and by the time that everybody decamped and went somewhere else, the market had changed. And had they been straight up and said, we're leaving this lease, they would have had a different market in which to sell. Right. They claimed that they didn't know that 3DFX intended to dissolve, that 3DFX intended to go out of business. That's what they claim. That was a public announcement. The asset purchase agreement was publicly announced. 3DFX was a public company. NVIDIA was a public company. There were press releases. There were disclosures all over the press. 3DFX's stock dropped dramatically at that moment. This was not a secret fact. It was the subject of public announcements of which the court can take judicial notice and which Judge Ware judicially noticed. Was there a request to take judicial notice? And did he grant it? Yes, I believe so. Can you give me the record citation of that? You know, I don't have it handy, Your Honor. We'll see if we can find it before the end of the argument today. All right. Well, is all of this your argument that there's no individual claims by the creditors here? It just is the estate claim? Yes. Or are you saying that there's really no cause of action on these other things? That is our position, and I think it's correct. And I think the best way to understand why that's so is to look at the one claim that is alleged by all three of the plaintiffs who brought suit against NVIDIA, the bankruptcy trustee, Carlisle, and Carr. All three of them alleged claims of successor liability. Now, successor liability is intrinsically a claim that the structure of the seller and the buyer was morphed, was changed by the transaction, that the transaction had certain attributes and features that would cause a court to conclude that even though the parties did not intend for the successor to acquire the liabilities of the seller, for the buyer to acquire the liabilities of the seller, that the purchaser should nevertheless be treated legally as the successor of the seller. That's a claim that everybody alleges. Now, that to me strikes me as a prototypical claim belonging to the estate. But that's not the only claim they bring, because we've been discussing the other claims for a moment. I understand that, and I'll get to it. So here's the issue. The trustee has tried. And at the core of that claim, as well as the core of the fraudulent transfer claim, is the notion that the purchaser paid inadequate consideration for what it acquired. And the bankruptcy trustee has tried that issue. Now, we know the judge's decision is not final yet. There's an appellate process that that will go through as well. But one of the things, one of the issues that the Kaplan Court noted as a subject matter of concern in making these decisions about who has standing and who doesn't is the risk of inconsistent adjudications. So if there's a risk of an inconsistent adjudication, that means you've probably got standing in the wrong place. So here we know successor liability is a claim that belongs to the estate because it changes so fundamentally the structure of the bankrupt, of the debtor. So that one we know belongs to the trustee. Now, let's look at what gets tried when you look at a successor liability claim. You try the question whether the purchaser paid enough for what the debtor sold. That notion of adequacy of consideration runs all the way through every single one of the claims that the landlords have brought. With the exception of intentional interference. I think it's actually part and parcel of that, too, Your Honor, because both of these lawsuits allege that the reason NVIDIA did not perform its ‑‑ I'm sorry, the reason 3DFX did not perform under the leases was because the asset purchase agreement led to its dissolution. Kennedy. As I understand Carlisle's position is they've got an independent right under the assumption of the lease that they allege, and Car America is saying, we're the victim of a fraud. Right. So those have nothing to do with the adequacy of the consideration paid by NVIDIA to 3DX. Right. Breach of the lease was actually one claim that I believe Judge Ware said that they could assert on their own, that that was a claim that they could assert. He did not dismiss that claim based on standing. He dismissed that based on statute of frauds and defects in the claim. Right. Right. And the fraud claim ‑‑ We're here to determine whether the statute of frauds is inadequate. Right. I mean, it's in defense of the matter of law, right? Exactly. And I think we've laid that out fairly clearly in the papers, and I think the asset purchase agreement speaks for itself in the closing. Do they have an argument here about this cap issue, about that they can assert it and don't ‑‑ they're not prohibited by the cap, but whereas the trustee would be? There is a Ninth Circuit decision in Ray Perry Arden that Judge Ware relied on that suggests that the application of the cap is a function of the lessor's status as a lessor and doesn't have so much to do with, you know, who they're pursuing it against. They're capped if their lessee is in bankruptcy. But that being said, I think Ware also provided for the possibility that that might present a sufficiently particularized claim to justify their claim of breach of the lease. But, again, breach of the lease is not a standing issue. It's a 12B6 issue. Statute of frauds forecloses the claim. So what I was trying to say is that because we have adjudicated or we are in the midst of adjudicating the adequacy of consideration issue, we are at risk, if the landlord actions proceed, of coming up with inconsistent adjudications. For example, one of the questions that Judge Ware ‑‑ I'm sorry, that Judge DeFremsky, the bankruptcy judge, determined in the course of figuring out what the value was of what NVIDIA received, gave up and received, was the ‑‑ was what did 3DFX transfer to NVIDIA? What assets were transferred to NVIDIA? And the bankruptcy judge did not include the Carlisle leases among those assets. The bankruptcy judge determined that it was a list of assets that were consistent with what the agreement provided. So if we go to a trial with the landlords and they claim, and they pursue a claim for breach of the lease on the theory that we assumed the lease, that would necessarily produce an outcome that's inconsistent with what has already been adjudicated or what may ‑‑ will have already been adjudicated by the time those actions were called. What would be the bottom line of this Court's decision in your view? That, I think, simply to affirm Judge Ware's decisions, I think the bottom line is that the allegations that these landlords are making are no different than the allegations that any creditor could make. Any creditor could claim that the asset purchase agreement left 3DFX with too few assets to keep ‑‑ to pay their debts as they came due. Any creditor could claim that 3DFX's dissolution ‑‑ The one thing that they're saying that any creditor cannot claim is that the lack of knowledge, had they known that there was ‑‑ that the rent was being paid by your company, they would have taken certain actions that they were precluded from taking because of their lack of knowledge. Right. And again, unclear why they claim they didn't know since they were on notice of the public announcement of 3DFX's decision to dissolve and to go out of business. There are ‑‑ there are some additional facts that are simply not ‑‑ it was publicly announced at the time of the asset purchase agreement. I'm more concerned about your giving your time to ‑‑ I know. I apologize. I have been running over. Thank you, Your Honors. Good morning, Your Honors. Douglas Applegate appearing for the 3DFX directors and officers, the former directors and officers. And technically, I am not appearing on behalf of Mr. Heddleson. Mr. Fitzgerald is in the courtroom on behalf of Mr. Heddleson. We submitted a joint brief, and Mr. Fitzgerald did not plan to argue unless the court had some specific questions for him. Now, didn't you settle a State law case for 5.5 million? We did, for 5.5 million. That, I think, makes us much different than the rest of this case. How? Number one, because we settled ‑‑ You settled with the trustee, not with these folks. That's correct. We settled with the trustee. And it was a settlement of a claim for breach of fiduciary duty, which is the exact same claim that Carlisle Fortran Trust is pursuing against the 3DFX directors and officers. So their claim against you is a breach of fiduciary duty. Yes. You say that's been settled. They haven't brought an action against you for secret agreement regarding occupying the lease premises. They haven't brought an action against you for assuming the lease. So you're saying, why are you here? That's exactly what I'm saying. Now, I also want to point out that in the brief, there's a lot of discussion about the Kaplan decision, which is an important decision. But people have remarkably failed to notice that the trustee in Kaplan filed two different lawsuits. He filed a lawsuit on behalf of the indenture holders, the bondholders, and he also filed a separate lawsuit on behalf of the directors and officers of the debtor. And the Supreme Court said he didn't have standing to sue on behalf of the indenture holders. But certainly in footnote 20 and footnote 23, the Supreme Court recognized that it was proper for him to sue the directors and officers. And that's not a surprise. There's a whole legion of cases where the debtor trustee in bankruptcy asserts that the directors and officers didn't fulfill their duties and caused a dissipation of the corporate assets, and he sues to collect for it. That happens all the time. And that's what happened here. So then the question becomes, well, does Carlyle get to sue a second time? Is there for some reason the trustee settlement not binding on that? Well, we know, again, from the Kaplan case that Carlyle so relies on at footnote 23 that the Supreme Court's position is that if the trustee has standing to pursue a claim, then he would be able to permit the trustee to bind the creditors to a settlement. And that's exactly what happened here. The other thing that Carlyle seems to forget, and never addressed in their brief at all, is that their cause of action for breach of fiduciary duty is a derivative cause of action. It's not a direct cause of action. It's like a shareholder cause of action against directors and officers. It's a derivative cause of action. And it's suing on behalf of the corporation. And just as with a shareholder cause of action, the shareholders don't get to pursue a derivative cause of action if the company itself acts to remedy the situation. And that's exactly what happened here. The company did act through the case. Your position is that the directors and officers of 3D don't have any fiduciary duty to a creditor. They have a duty, but it's a derivative duty. When a company enters the zone of insolvency, they have a duty to their own company. Correct. I understand that. But is your position they have no duty to a creditor, fiduciary duty? The fiduciary duty goes to the company, and the people who can enforce it are normally the company itself. If the company refuses to act, the shareholders. Third time. And a derivative. Third time there's no independent duty by directors and officers to creditors. Correct. No independent duty to the creditors. Correct. Thank you. That was pursued by the trustee. It was pursued by the trustee with a settlement and a complete release, and we believe that ends it. And otherwise, clearly, we'd be exposed to double liability, triple liability, what would stop every creditor from filing the exact same lawsuit. All right. Thank you very much for that. Thank you very much. All right. Ms. Schumanner. Thank you, Your Honors. Would you please address the remarks by Ms. Johnson that the contract which you cited as being a contract which was signed by the parties, in effect, did not cause assumption of the lease because the contract itself, pursuant to your allegation in paragraph 90 of your Fourth Amendment complaint, specifically related that individual assumptions of leases had to be signed and weren't? The assumption of the lease was signed. The APA, the Asset Purchase Agreement, which contained the assumption of the lease, was signed. The contract was signed on December 15, 2000. Do you so allege in your complaint? Yes. Where? Well, the contract is attached to the complaint. Right. As I understood Ms. Johnson, she was saying that the terms of the contract specifically say that these proposed leases do not become assumed by NVIDIA unless they are individually later executed as assumed. No. No, I don't believe that. Where do you allege? Maybe you need to leave to amend your complaint, but where do you allege that those individual leases were signed or the individual leases were assumed? I believe that we don't allege we do allege that the individual leases were assumed. We do not allege that the schedule showing the leases were assumed was itself signed because they are schedules to an agreement that was signed. They are simply the document which contains the provision that lists out the leases that were assumed by NVIDIA. There is a provision in the contract that says there will be proposed schedules sent to us December 18, 2000. The contract is signed December 15, 2000. It says there will be proposed schedules sent to us December 18, 2000 that will be exhibits to the contract, and those proposed schedules will list the contracts that we, NVIDIA, assume. But what about that language that she quoted that the leases to be assumed would not be valid without separate signatures? There's no such language anywhere. Not in the asset purchase agreement. There is no language anywhere that requires NVIDIA to sign any assumption of a lease. Miss Johnson's erroneous then when she says that. Didn't she say that that was required? No, I believe that. Not only was it required, it was alleged in your complaint in paragraph 90. No. What's alleged in our complaint in paragraph 90 is a quote from the asset purchase agreement which says that NVIDIA ---- it says, on or before December 18, 2000, 3DFX shall deliver to NVIDIA all proposed schedules and exhibits under this agreement, none of which shall be deemed a part hereof without the written consent of NVIDIA and NVIDIA sub. Okay. That does not mean that there has to be a document called assumption of the lease that must be signed. But there has to be something which indicates the consent. There are many somethings. There are many written somethings. One of the written somethings is an e-mail from NVIDIA's chief financial officer and under California law that is assigned writing requiring 3DFX to remove a mechanics lien from the property because it is impairing an asset, i.e., Carlisle's lease, that NVIDIA bought. There is ---- when Carlisle went to 3DFX in December and said ---- Wait a minute. That could also be a demand by a negotiating party during the process of negotiation and prior to consenting to take that lease. That ---- So that doesn't ---- it doesn't convince me. Well, Your Honor, the e-mail doesn't talk about paying off the mechanics lien as a condition to NVIDIA buying the lease. It refers to the lease as something that NVIDIA had already bought and demanded that 3DFX remove the lien. Do you have a citation to the record as to that famous e-mail? It is ---- it is cited in paragraph 98 of the complaint. Ninety-eight of complaint? Yes, Your Honor. Heard about the ---- this is coming from NVIDIA's chief financial officer. Heard about the mechanics lien on the building, referring to Carlisle's building. Can you pay the $96,000 else the lease terminates and one of the assets we bought goes away? And one of the assets we bought is Carlisle's lease. What the intent of the parties were, there are clearly sufficient writings. Under California law, the Versace case makes the statute of frauds criteria pretty plain, and it states, Whether a document is incorporated into the contract depends on the party's intent as it existed at the time of contracting. The time of contracting was December 15, 2000. It then goes on to say ---- You're taking some of your time away from Mr. Karameric. I would like to address just two more things very, very quickly, and I promise not to take more than a minute. With respect to the 3DFX claims in the State court action, the trustee asserted different claims than Carlisle is asserting against the 3DFX directors and officers. Even the successor liability claims, successor liability claims can be brought on three different bases at minimum. One is fraudulent conveyance, which the trustee did claim. Another one is assumption of contract, which Carlisle is claiming and the trustee did not. Okay? And the third is continuation of a business. When the claims that the trustee was focusing on in the State court against the 3DFX directors and officers, they were claiming that the 3DFX directors and officers breached their duty to the corporation itself by giving themselves golden parachutes and depleting the corporation's assets, by recklessly causing the corporation to merge with to purchase another company called Gigapixel. None of these things have anything to do with Carlisle's claims. Carlisle is asserting breach of fiduciary duty claims to the creditors, to Carlisle in particular, because the 3DFX directors and officers delegated to NVIDIA the decision whether to allow Carlisle to purchase out their lease. Okay?  This is the basis of any duty that the officers and directors of 3G or 3D owe to creditors. When the corporation is insolvent or in the zone of insolvency, there's an absolute priority rule, and the directors and officers of 3DFX most assuredly owe a fiduciary duty to the creditors. Based on imminent insolvency. Thank you very much. We'll hear from Mr. O'Donnell. Thank you, Your Honor, and thank you for picking up on my anxiety that I might not have a chance to get back up here. I'll give you two minutes. I wanted to just address two things, Your Honor. First is, is that this question of knowledge. Carr did allege in its complaint that it had no knowledge of the asset purchase agreement and the secret agreement. NVIDIA's counsel represented that a request for judicial notice was made. To be honest with you, I don't remember if that did happen, but I do know this. I read the order dismissing the Third Amendment complaint. There was no oral argument, and that order is silent about whether or not any request for judicial notice was made or granted. I don't think that there was one. In any event, the district court did not grant one, at least not in the order of dismissal. Moreover, the question of knowledge and notice. In a fraud case, we cited a case in our reply brief that in a fraud case, public records are not a defense, and this press release doesn't even rise to the level of a public record. It was something put out on bizwire or something. And one thing's crystal clear. No one came to CARAmerica at the time this went down and said, we're going to secretly occupy your premises and pretend like 3DFX is still there. So that's the first thing I wanted to address. The other thing I wanted to address is just the allegations of our complaint. This is an appeal from a granting of a 12B6 motion. Everybody knows what the law is. You're supposed to look at all of the allegations of the complaint. They're supposed to be interpreted liberally. And you can't just take one little piece of the complaint and say that's the gravamen of CARA's complaint. In NVIDIA's counsel's argument, she completely ignored paragraph 17, 19, 20, and 21 of the complaint, all of which alleged the particulars of the secret agreement regarding the CARAmerica lease. And she also ignored the allegation in paragraph 27, which is part of the interference with contract claim, that says the NVIDIA defendants further intended to interfere with CARA's contractual relationship with 3DFX by entering into the secret agreement alleged above and taking the other actions alleged hereafter. Thank you. Thank you very much, Mr. River. Thanks to counsel on both sides for good argument on a very complex and interesting case. Thank you.
judges: Farris, Bea, Siler